| AOC-E-105  Sum Code: CI |  | Case #: **23-CI-002029** |
|---|---|---|
| Rev. 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky  Court of Justice   Courts.ky.gov | | County: **JEFFERSON Circuit** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **LOGAN, DORIS VS. KAISER, BRENDAN ET AL**, *Defendant*

**TO: MAYOR CRAIG GREENBURG**
     **527 W. JEFFERSON STREET**
     **#600**
     **LOUISVILLE, KY 40202**

Memo: Related party is LOUISVILLE METRO GOVERNMENT

The Commonwealth of Kentucky to Defendant:
**LOUISVILLE METRO GOVERNMENT**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ David L. Nicholson
Jefferson Circuit Clerk
Date: 3/30/2023

Presiding Judge: HON. MITCH PERRY (630267)

---

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____     Served By _____

Title _____

---

Summons ID: @00001028976 , JEFFERSON COUNTY SHERIFF
CIRCUIT: 23-CI-002029 Sheriff Service
LOGAN, DORIS VS. KAISER, BRENDAN ET AL



Page 1 of 1


eFiled

NO._____                                   JEFFERSON CIRCUIT COURT
                                                         DIVISION_____
                                                         JUDGE_____

*Electronically Filed*

DORIS LOGAN, ON BEHALF OF MINOR C.L.                                    PLAINTIFF

v.                              **COMPLAINT**

BRENDAN KAISER                                                          DEFENDANTS
Individual Capacity

    Service:    2911 Taylor Blvd.
                  Louisville, KY 40208

and

LOUISVILLE METRO GOVERNMENT, D/B/A
LOUISVILLE METRO POLICE DEPARTMENT

    Service:    Mayor Craig Greenberg
                  527 W. Jefferson Street, #600
                  Louisville, KY 40202

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

      Comes now the Plaintiff, Doris Logan ("Plaintiff") on Behalf of Minor C.L., by and through counsel, and hereby moves this honorable Court for judgment against the above-named Defendants. In support of her Complaint, Plaintiff states as follows:

## I.    PRELIMINARY STATEMENT

    1.    This is a personal injury and civil rights action arising out of an incident that occurred on or about February 20, 2023, in Louisville, Kentucky, where minor C.L. was shot and injured by Louisville Metro Police Officer Brendan Kaiser. The Defendant Kaiser is sued in his individual capacity for his actions. Louisville Metro Government ("LMPD") is a named Defendant pursuant to *Monell*.

## II.   JURISDICTION AND VENUE

2. Jurisdiction and venue are proper due to the location of the incident, the damages claimed and the matters in controversy.

## III.   THE PARTIES

3. The Plaintiff, Doris Logan, is the grandmother of the injured, C.L., and is the duly appointed guardian of C.L.

4. Defendant Kaiser Officer Brendan Kaiser is and, at all times relevant to this action, was employed by the city of Louisville as a police officer for the Louisville Metro Police Department. He is sued in his individual capacity.

## IV.   FACTS

### *Defendant Kaiser's Unlawful Shooting of C.L.*

5. On February 20, 2023, C.L. was sixteen (16) years old.

6. On this date, C.L. and other minors were in an abandoned garage located at 802 South 38th Street.

7. The Defendant Kaiser and another LMPD officer were dispatched to a call for service at the location.

8. When the Defendant Kaiser arrived, the garage was closed.

9. Upon information and belief, the Defendant Kaiser did not announce himself or take any other actions to identify a police presence to C.L. and others present while the garage door was closed.

10. Several minutes after the Defendant Kaiser was on scene, C.L. and others attempted to open the garage.

11. The Defendant Kaiser prevented the garage from being opened.

2

12. The Defendant Kaiser did not identify himself as a police officer when he stopped the garage door from being opened.

13. Shortly thereafter, C.L. and others again attempted to open the garage.

14. This time, they were able to do so successfully.

15. The Defendant Kaiser, with his firearm drawn, moved towards C.L and others as they were attempting to exit the garage.

16. C.L. and the others were unarmed.

17. C.L. and the others did not present a threat of severe injury or death to the Defendant Kaiser or anyone else.

18. C.L. and the others were simply trying to run away.

19. C.L. and the others were not suspected of any violent felony at the time.

20. C.L. and the others made no aggressive or threatening movements towards the Defendant Kaiser.

21. The Defendant Kaiser, as he approached C.L. and the others, had his firearm pointed in the direction of C.L. and the others.

22. The Defendant Kaiser, as he approached C.L. and the others, had his finger on the trigger of his firearm.

23. The Defendant Kaiser, as he approached C.L. and the others, had his finger on the trigger of his firearm.

24. A shot fired by the Defendant Kaiser struck C.L., penetrating through his back and traveling through his midsection.

25. The Defendant Kaiser's use of deadly force was unjustified.

26. The Defendant Kaiser's use of deadly force was unreasonable.

3

27. The Defendant Kaiser's use of deadly force was intentional and reckless.

28. At the time the Defendant Kaiser shot C.L., it had "been clearly established in this circuit for some time that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others." *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012).

### *LMPD's Unlawful Customs and Practices in Regard to Use of Force, Training, and Supervision*

29. The Defendant Kaiser's use of excessive and unjustified deadly force was also the result of LMPD's pattern and practice of negligently training their officers on the proper use of a firearm and the proper justification for using deadly force.

30. Over the past several years, several LMPD officers have engaged in conduct demonstrating that LMPD inadequately trains its officers regarding the proper use of a firearm.

31. In 2023, LMPD's own firearms instructor recently shot a recruit during firearms instruction. Upon information and belief, he has not been disciplined.

32. LMPD officer Sarah Stumler recklessly and negligently shot an unarmed citizen, nearly causing him to die. She retained her job.

33. The individual who served as LMPD's firearms instructor during a substantial part of the Defendant Kaiser's employment drove to work after drinking and performed duties as firearms instructor with alcohol in his system. He retained his employment with the agency.

34. LMPD officer Brett Hankison recklessly, blindly and negligently fired at least 10 shots blindly into two different residences during the execution of a 2020 search warrant.

35. An LMPD officer, who had been with the department for 15 years, recklessly shot himself in the stomach in September 2021.

36. LMPD officers recklessly shot and killed Breonna Taylor, who was unarmed and

presenting no threat to officers, in March of 2020.

37.  Over the past several years, LMPD has engaged in a custom and practice of ratifying the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of excessive force.

38.  According to a recent investigation of LMPD performed by members of the US Department of Justice:

- LMPD "officers routinely use force disproportionate to the threat or resistance posed."

- LMPD officers have repeatedly used unreasonable force against teenagers.

- LMPD's weak oversight contributes to its officers' use of excessive force.

- "Supervisors routinely overlook or even defense obviously excessive force."

- Of 2,217 documented use of force reports between January 1, 2016 and October 9, 2021, supervisors routinely failed to identify misconduct that was present within several of the incidents.

- LMPD lacks clear policy "on how and when it is appropriate to use force."

- LMPD "fails to properly train officers on how to follow the policies it does have."

- LMPD, in some cases, fails to train officers at all on policy changes.

- "LMPD fails to exercise proper oversight to address potentially unreasonable force and remedy bad tactics when they occur."

- "LMPD's failure to provide officers with the necessary guidance, skills, and oversight contributes to the constitutional violations (excessive force)…"

- Supervisors routinely endorse and perpetuate unlawful conduct.

- "LMPD supervisors regularly fail to investigate and assess uses of force, which contributes to officers using excessive force."

- "LMPD supervisors regularly fail to identify, document, and address problematic conduct by officers under their command."
- "Deficient supervision extends throughout the ranks, including commanders who are disconnected from day-to-day activities, and mid-level supervisors who operate independently and provide little direction to their subordinates."
- "Inadequate supervision contributes to LMPD's systemic legal violations."
- "Ineffective supervision results from inadequate training and from supervisors' reluctance or refusal to confront officers about violations."
- LMPD does not provide adequate training on key aspects of supervision, such as reporting uses of force.
- "(S)ome supervisors take the path of least resistance and avoid writing up their subordinates, while others protect officers instead of holding them accountable."
- "LMPD does not consistently investigate potential misconduct."
- Supervisors "fail to detect and address misconduct."
- "(S)upervisors fail to address repeated violations with progressively more serious consequences."
- LMPD needs new use-of-force training that provides clear guidance to officers about when to use the different force options.
- LMPD needs to ensure trainings are delivered by qualified instructors, that training uses best practices in adult learning, and should incorporate outside experts and community-based instructors.
- "Officers and employees have deficient training, substandard facilities and equipment, and inadequate support…"

6

- Deficiencies in LMPD's force policies and training contribute to unconstitutional behavior.
- Officers are deficiently trained on the use of less lethal options, including but not limited to tasers.
- Officers fail to integrate de-escalation strategies into their encounters, leading to unreasonable uses of force.
- LMPD needs "clear policies enforcing constitutional limits on police practices, meaningful training to ensure they understand these policies and to prepare them for real-world encounters…"
- "LMPD's training academy has not systematically assessed officers' training needs…"
- "The academy has failed to ensure training for officers across LMPD that is consistent with law and policy…"

39. LMPD's prior instances of unconstitutional conduct demonstrate that the agency has ignored a history of reckless and constitutional usage of firearms and excessive force and that LMPD was clearly on notice that the training in these particular areas was deficient and likely to cause injury.

40. LMPD has a pattern of inadequately investigating claims of excessive force and reckless usage of firearms.

41. LMPD's tacit approval of this clear pattern of unconstitutional conduct constitutes deliberate indifference in their failure to act and amounts to an official policy of inaction.

42. LMPD's customs and practices herein are moving forces behind the reckless and unconstitutional shooting of C.L.

7

### *LMPD's Failure to Properly Train and Supervise Defendant Kaiser*

43. According to LMPD's OIS database, the Defendant Kaiser fatally shot a 42-year-old Black male in 2018.

44. The documentation reflects that the Black male did not have a firearm on his person when the Defendant Kaiser shot and killed him.

45. The Defendant Kaiser was 23 years old, with one year of experience in the department, when he killed the Black male.

46. Upon information and belief, the Defendant Kaiser did not obtain remedial training or counseling following his 2018 killing of the Black male.

47. LMPD's Professional Standards Unit exonerated Defendant Kaiser for the shooting.

48. Seven months following Defendant Kaiser's 2018 fatal shooting of a Black male, a PSU investigation was filed against Kaiser and other officers with relation to an incident.

49. In the incident, the Defendant Kaiser and others were alleged to have violated policy with relation to use of physical force, conduct unbecoming, body camera usage, and courtesy.

50. The use of force by Defendant Kaiser was found to violate policy.

51. The Defendant Kaiser was not properly retrained following his use of excessive force.

52. The Defendant Kaiser's only discipline for his use of excessive force was a letter of reprimand.

53. In 2020, a PSU complaint was opened against the Defendant Kaiser and another officer.

8

54. The complaint was assigned the Case Number PSU 20-064.

55. Upon information and belief, as of the time of this filing, the Defendant Kaiser's Complaint and Disciplinary History (CDH) in his personnel file makes no reference of PSU 20-064.

56. Upon information and belief, the Defendant Kaiser was suspended in 2022 for 4 days, effective July 6, 2022, for a violation of Standard Operating Procedures 5.1.11 (Courtesy) and 9.1.3 (De-escalation).

57. The Defendant Kaiser's personnel file makes no reference to the suspension or to the incident(s)/action(s) giving rise to the suspension.

## V. CLAIMS

### COUNT I – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT (Kaiser)

58. Plaintiff incorporates the preceding paragraphs by reference.

59. The Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

60. At all times relevant herein, it was clearly established that unarmed citizens, including C.L., have a right not to be shot unless they are reasonably perceived as posing a threat of serious injury or death to officers or others.

61. The Defendant, while acting under color of law and within the scope of his employment as an employee of the Louisville Metro Police Department, violated C.L.'s rights and privileges granted to him by the Fourth Amendment of the United States Constitution when he shot C.L.

62. C.L. did not pose an imminent threat of death or serious injury to anyone when the Defendant shot him.

63. At all times relevant herein, the Defendant knew or should have known that pointing a firearm at another person is a show of force only justified under certain circumstances.

64. The subject incident did not present a permissible situation for the Defendant Kaiser to point his firearm at C.L.

65. At the time the Defendant shot C.L., it was clearly established that use of such force was excessive and unconstitutional.

66. At the time the Defendant pointed his firearm at C.L. with his finger on the trigger, he knew or should have known that such a show of force was excessive, reckless, and contrary to his ministerial obligations as an officer with LMPD.

67. The Defendant had no objectively reasonable basis to believe that C.L. presented an imminent threat or risk of death, serious injury, or harm to himself or others at any time leading up to and during the moments when he shot him.

68. The Defendant's actions were intentional, willful, malicious, and in reckless disregard for C.L.'s clearly established rights guaranteed under the Fourth Amendment.

69. The actions of the Defendant directly deprived C.L. of his constitutional rights and proximately caused his injuries and suffering.

70. The conduct of the Defendant was intentional and was in gross violation of lawful standards for use of force, rendering it inevitable that C.L. would be injured.

71. The Defendant's actions constitute willful, wanton, reckless, conscious, malicious, and deliberate indifference to and disregard for C.L.'s Constitutional rights, such that the Plaintiff is entitled to recover punitive damages.

72. The Defendant's deprivation of C.L.'s constitutional rights entitles the Plaintiff to recover damages for past and future medical expenses, past and future physical and emotional pain

and suffering, destruction of power to labor and earn income, and any other element of damages to which she, in her capacity as custodian of C.L., may be entitled.

### COUNT II - CUSTOM OF TOLERANCE OR ACQUIESCENCE TO EXCESSIVE FORCE AGAINST CITIZENS (Monell Defendant LMPD)

73. Plaintiff incorporates the preceding paragraphs by reference.

74. LMPD, at all times relevant herein, had a pattern and practice of inadequately investigating claims of excessive force.

75. LMPD, at all times relevant herein, had a pattern and practice of tolerating the unconstitutional use of force against citizens.

76. LMPD, at all times relevant herein, had notice of a clear pattern within the department of excessive force and reckless usage of firearms.

77. LMPD's deliberate indifference in their failure to act amounts to a policy or custom.

78. LMPD's custom was the moving force and/or direct causal link in the violation of the Plaintiff's right to be free from excessive force.

### COUNT III – INADEQUATE TRAINING OR SUPERVISION (Monell Defendant LMPD)

79. Plaintiff incorporates the preceding paragraphs by reference.

80. LMPD had ignored repeated instances of officers' unconstitutional use of force and was clearly on notice at the time of the incident herein that the training in this particular area was deficient and likely to cause injury.

81. LMPD had ignored repeated instances of officers' reckless use of firearms and was clearly on notice that the training in this particular area was deficient and likely to cause injury.

82. LMPD's failure to provide the obviously needed training demonstrated a deliberate indifference to constitutional rights of C.L.

83. Proper training and supervision would have prevented the deprivation of C.L.'s constitutional rights.

84. LMPD's inadequate training and supervision was a moving force and/or direct causal link in the violation of the Plaintiff's right to be free from excessive force.

### COUNT IV - RATIFICATION (Monell Defendant LMPD)

85. Plaintiff incorporates the preceding paragraphs by reference.

86. The use of excessive force is ratified by LMPD.

87. LMPD ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish excessive force.

88. LMPD's ratification created a culture of approving the use of excessive force.

89. LMPD's ratification was a moving force and or direct causal link in the violation of the Plaintiff's right to be free from excessive force.

### COUNT V – BATTERY (Kaiser)

90. Plaintiff incorporates the preceding paragraphs by reference.

91. The Defendant Kaiser intended to cause contact with C.L.

92. The Defendant Kaiser caused harmful contact with C.L.

93. C.L. did not consent to Kaiser's contact with him.

94. The Defendant's Kaiser's contact with C.L. was unlawful and caused injury and damages to C.L.

### VI.   JURY DEMAND

95. Plaintiff hereby demands a trial by jury of all issues so triable.

### VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court award the following:

    A.    Compensatory damages in an amount to be shown at trial;

    B.    Punitive damages in an amount to be shown at trial (individual; capacity claims);

    C.    Costs incurred in this action and reasonable attorney's fees;

    D.    Prejudgment and post-judgment interest to the extent permitted by law and the Court; and

    E.    Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

SAM AGUIAR INJURY LAWYERS, PLLC

*/s/ Sam Aguiar*
Sam Aguiar
1900 Plantside Drive
Louisville, KY 40299
Telephone: (502) 400-6969
Facsimile: (502) 491-3946
sam@kylawoffice.com
*Counsel for Plaintiff*

13

NO._____         JEFFERSON CIRCUIT COURT
                               DIVISION_____
                               JUDGE_____

*Electronically Filed*

DORIS LOGAN, ON BEHALF OF MINOR C.L.                    PLAINTIFF

v.    **PLAINTIFF'S NOTICE OF ELECTION OF ELECTRONIC SERVICE**

BRENDAN KAISER                                          DEFENDANTS
Individual Capacity, et al.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Comes the Plaintiff, by counsel, pursuant to CR 5.02(2), and hereby gives notice that counsel for Plaintiff elects to effectuate and receive service of documents via electronic means. The undersigned counsel agrees to accept electronic service at the following addresses:

sam@kylawoffice.com
pleadings@kylawoffice.com

Pursuant to CR 5.02(2), all Parties are requested to promptly provide counsel for Plaintiff with an electronic address at which they may be served with documents via electronic means.

Respectfully Submitted,

SAM AGUIAR INJURY LAWYERS, PLLC

*/s/ Sam Aguiar*
Sam Aguiar
1900 Plantside Drive
Louisville, KY 40299
Telephone: (502) 400-6969
Facsimile: (502) 491-3946
sam@kylawoffice.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Notice of Election of Electronic Service was electronically filed with the Complaint and Summons in this action and a request made of the Circuit Clerk that the Notice be served with the Complaint and Summons upon all named Defendants.

/s/ Sam Aguiar
Counsel for Plaintiff